1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11   ARISTEO SERRATO ALVARADO,            )   Case No.: 1:13-cv-00523-LJO-JLT
                                          )
12              Petitioner,               )   FINDINGS AND RECOMMENDATIONS RE:
                                          )   RESPONDENT'S MOTION TO DISMISS (Doc. 11)
13        v.                              )
                                          )   ORDER DIRECTING OBJECTIONS TO BE FILED
14   G. SWARTHOUT, Warden,                )   WITHIN TWENTY-ONE DAYS
                                          )
15              Respondent.               )
                                          )
16   _____ )

17        Petitioner is a state prisoner proceeding in propria persona with a petition for writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254.

19                         **PROCEDURAL HISTORY**

20        The instant petition was filed on March 28, 2013.[1]  On April 19, 2013, the Court ordered

21

22   _____

23   [1] In Houston v. Lack, the United States Supreme Court held that a pro se habeas petitioner's notice of appeal is deemed
     filed on the date of its submission to prison authorities for mailing, as opposed to the actual date of its receipt by the court
     clerk.  Houston v. Lack, 487 U.S. 166, 276, 108 S.Ct. 2379, 2385 (1988).  The rule is premised on the pro se prisoner's
24   mailing of legal documents through the conduit of "prison authorities whom he cannot control and whose interests might
     be adverse to his."  Miller v. Sumner, 921 F.2d 202, 203 (9th Cir. 1990); see Houston, 487 U.S. at 271. The Ninth Circuit
25   has applied the "mailbox rule" to state and federal petitions in order to calculate the tolling provisions of the AEDPA.
     Saffold v. Neland, 250 F.3d 1262, 1268-1269 (9th Cir. 2000); Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003).
26   The date the petition is signed may be considered the earliest possible date an inmate could submit his petition to prison
     authorities for filing under the mailbox rule.  Jenkins v. Johnson, 330 F.3d 1146, 1149 n. 2 (9th Cir. 2003).  Accordingly,
27   for all of Petitioner's state petitions and for the instant federal petition, the Court will consider the date of signing of the
     petition (or the date of signing of the proof of service if no signature appears on the petition) as the earliest possible filing
28   date and the operative date of filing under the mailbox rule for calculating the running of the statute of limitation.
     Petitioner signed the instant petition on March 28, 2013.  (Doc. 1, p. 6).

                                          1

1   Respondent to file a response to the petition. (Doc. 7). On June 18, 2013, Respondent filed the instant

2   motion to dismiss, contending that the petition should be dismissed as untimely and as a second and

3   successive petition. (Doc. 11). On July 18, 2013, Petitioner filed his opposition to the motion to

4   dismiss, arguing that the petition is not successive because he is raising a claim based on newly

5   discovered evidence that was not available to him in the prior federal petition. (Doc. 16). On July 25,

6   2013, Respondent filed a reply to the opposition. (Doc. 17).

7                                           **DISCUSSION**

8          A.   Procedural Grounds for Motion to Dismiss

9          As mentioned, Respondent has filed a Motion to Dismiss the petition as being filed outside the

10  one year limitations period prescribed by Title 28 U.S.C. § 2244(d)(1). Rule 4 of the Rules Governing

11  Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of

12  the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court

13  . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

14         The Ninth Circuit has allowed Respondent's to file a Motion to Dismiss in lieu of an Answer if

15  the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's

16  procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to

17  evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d

18  599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state

19  procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus,

20  a Respondent can file a Motion to Dismiss after the court orders a response, and the Court should use

21  Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

22         In this case, Respondent's Motion to Dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s

23  one year limitation period and on the fact that the petition is a second and successive one. Because

24  Respondent's Motion to Dismiss is similar in procedural standing to a Motion to Dismiss for failure to

25  exhaust state remedies or for state procedural default and Respondent has not yet filed a formal

26  Answer, the Court will review Respondent's Motion to Dismiss pursuant to its authority under Rule 4.

27         B.   Second and Successive Petition.

28         The documents provided by Respondent establish that Petitioner has previously filed a federal

petition challenging the same conviction and sentence in case no. 1:99-cv-06122-OWW-HGB.  (LD

17-20).  In that case, Petitioner challenged his 1995 conviction on two grounds, i.e., instructional error

and insufficient evidence.  On April 20, 2000, the Court issued Findings and Recommendations to

deny the petition on its merits; on July 13, 2000, the District Judge adopted those Findings and

Recommendations, entered judgment against Petitioner, and closed the case.

A federal court must dismiss a second or successive petition that raises the same grounds as a

prior petition.  28 U.S.C. § 2244(b)(1).  The Court must also dismiss a second or successive petition

raising a *new ground* unless the petitioner can show that 1) the claim rests on a new, retroactive,

constitutional right or 2) the factual basis of the claim was not previously discoverable through due

diligence, and these new facts establish by clear and convincing evidence that but for the constitutional

error, no reasonable fact-finder would have found the applicant guilty of the underlying offense. 28

U.S.C. § 2244(b)(2)(A)-(B).

However, it is not the district court that decides whether a second or successive petition meets

these requirements that allow a petitioner to file a second or successive petition, but rather the Ninth

Circuit.  Section 2244 (b)(3)(A) provides: "Before a second or successive application permitted by this

section is filed in the district court, the applicant shall move in the appropriate court of appeals for an

order authorizing the district court to consider the application."   In other words, Petitioner must obtain

leave from the Ninth Circuit before he can file a second or successive petition in district court.  See

Felker v. Turpin, 518 U.S. 651, 656-657 (1996).  This Court must dismiss any second or successive

petition unless the Court of Appeals has given Petitioner leave to file the petition because a district

court lacks subject-matter jurisdiction over a second or successive petition.  Pratt v. United States, 129

F.3d 54, 57 (1st Cir. 1997); Greenawalt v. Stewart, 105 F.3d 1268, 1277 (9th Cir. 1997), *cert. denied*,

117 S.Ct. 794 (1997);  Nunez v. United States, 96 F.3d 990, 991 (7th Cir. 1996).

Because the current petition was filed after April 24, 1996, the provisions of the Antiterrorism

and Effective Death Penalty Act of 1996 (AEDPA) apply to Petitioner's current petition.  Lindh v.

Murphy, 521 U.S. 320, 327 (1997).  Although Petitioner contends that he could not have known of the

newly discovered evidence after the resolution of his first petition, as discussed above, whether

Petitioner's allegations satisfy the exception provided in 28 U.S.C. § 2244(b)(2)(A)-(B) is not a

3

question for this Court, but, rather, it is a question that must be addressed to the United States Court of Appeals for the Ninth Circuit.

Petitioner makes no showing that he has obtained prior leave from the Ninth Circuit to file this successive petition attacking his 1995 conviction.  That being so, this Court has no jurisdiction to consider Petitioner's renewed application for relief from that conviction under § 2254 and must dismiss the petition.  See Greenawalt, 105 F.3d at 1277; Nunez, 96 F.3d at 991.  If Petitioner desires to proceed in bringing this petition for writ of habeas corpus, he must first file for leave to do so with the Ninth Circuit.  See 28 U.S.C. § 2244 (b)(3).

C.   Limitation Period For Filing Petition For Writ Of Habeas Corpus

However, even if the Court had jurisdiction to consider this petition, it is untimely.  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997).  The instant petition was filed on March 28,  2013, and thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal petition for writ of  habeas corpus. 28 U.S.C. § 2244(d)(1).  As amended, § 2244, subdivision (d) reads:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In most cases, the limitation period begins running on the date that the petitioner's direct review became final.  Here, Petitioner was convicted on October 26, 1995 in the Tulare County Superior Court of two counts of second-degree murder and attempted murder and sentenced to a prison term of 48 years to life.  (Doc. 1, p. 1).  Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate District ("5th DCA"), which, on February 5, 1998, modified the judgment to reduce the firearm use enhancements from ten to five years but in all other respects affirmed the judgment and sentence.  (Doc. 13, Lodged Documents ("LD") 2).  Petitioner then filed a petition for review in the California Supreme Court which was denied on April 22, 1998.  (LD 4).  Thus, direct review would have concluded on July 21, 1998, when the ninety day period for seeking review in the United States Supreme Court expired.  Barefoot v. Estelle, 463 U.S. 880, 887 (1983); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999); Smith v. Bowersox, 159 F.3d 345, 347 (8th Cir.1998).  Petitioner would then have one year from the following day, July 22, 1998, or until July 21, 1999, absent applicable tolling, within which to file his federal petition for writ of habeas corpus.

As mentioned, the instant petition was filed on March 28, 2013, almost fourteen years after the date the one-year period would have expired.  Thus, unless Petitioner is entitled to either statutory or equitable tolling, the instant petition is untimely and should be dismissed.

D.    Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

Under the AEDPA, the statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court.  28 U.S.C. § 2244(d)(2).  A properly filed application is one that complies with the applicable laws and rules governing filings, including the form of the application and time limitations.  Artuz v. Bennett, 531 U.S. 4, 8, 121 S. Ct. 361 (2000).  An application is pending during the time that 'a California petitioner completes a full round of [state] collateral review," so long as there is no unreasonable delay in the intervals between a lower court decision and the filing of a petition in a higher court.  Delhomme v. Ramirez, 340 F. 3d 817, 819 (9th Cir. 2003), abrogated on other grounds as recognized by Waldrip v. Hall, 548 F. 3d 729 (9th Cir. 2008)(per curium)(internal quotation marks and citations omitted); see Evans v. Chavis,  546 U.S. 189, 193-194, 126 S. Ct. 846 (2006); see Carey v. Saffold, 536 U.S. 214,

220, 222-226, 122 S. Ct. 2134 (2002); see also, Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

Nevertheless, there are circumstances and periods of time when no statutory tolling is allowed. For example, no statutory tolling is allowed for the period of time between finality of an appeal and the filing of an application for post-conviction or other collateral review in state court, because no state court application is "pending" during that time.  Nino, 183 F.3d at 1006-1007; Raspberry v. Garcia, 448 F.3d 1150, 1153 n. 1 (9th Cir. 2006).  Similarly, no statutory tolling is allowed for the period between finality of an appeal and the filing of a federal petition.  Id. at 1007.   In addition, the limitation period is not tolled during the time that a federal habeas petition is pending.  Duncan v. Walker, 563 U.S. 167, 181-182, 121 S.Ct. 2120 (2001); see also, Fail v. Hubbard, 315 F. 3d 1059, 1060 (9th Cir. 2001)(as amended on December 16, 2002).  Further, a petitioner is not entitled to statutory tolling where the limitation period has already run prior to filing a state habeas petition.  Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."); Jiminez v. White, 276 F. 3d 478, 482 (9th Cir. 2001). Finally, a petitioner is not entitled to continuous tolling when the petitioner's later petition raises unrelated claims.  See Gaston v. Palmer, 447 F.3d 1165, 1166 (9th Cir. 2006).

Here, the documents lodged by Respondent with this motion to dismiss establish that Petitioner filed the following six state habeas petitions: (1) petition filed in the Superior Court of County on Tulare on December 24, 2002, and denied on January 22, 2003 (LD 5, 6);[2] (2) petition filed in the 5th DCA on March 13, 2003, and denied on June 10, 2003 (LD 7, 8); (3) petition filed in the California Supreme Court on October 14, 2003, and denied on July 28, 2004 (LD 9, 10); (4) petition filed in the Tulare County Superior Court on December 9, 2010, and denied on December 28, 2010 (LD 11, 12); (5) petition filed in the 5th DCA on January 31, 2011, and denied on August 10, 2011 (LD 13, 14); and (6) petition filed in the California Supreme Court on November 10, 2011, and denied on April 11, 2012 (LD 15, 16).

Here, Petitioner is not entitled to any statutory tolling because the limitation period expired on

---

[2] In computing the running of the statute of limitations, the day an order or judgment becomes final is excluded and time begins to run on the day after the judgment becomes final.  See Patterson v. Stewart, 251 F.3d 1243, 1247 (9th Cir. 2001) (Citing Rule 6 of the Federal Rules of Civil Procedure).

1    July 21, 1999, three and one-half years before Petitioner filed his first state habeas petition on

2    December 24, 2002.  A petitioner is not entitled to tolling where the limitations period has already run

3    prior to filing a state habeas petition.  Green v. White, 223 F.3d 1001, 1003 (9th Cir. 2000); Jiminez v.

4    Rice, 276 F.3d 478 (9th Cir. 2001);  see Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000)

5    (same); Ferguson v. Palmateer, 321 F.3d 820 (9th Cir. 2003)("section 2244(d) does not permit the

6    reinitiation of the limitations period that has ended before the state petition was filed."); Jackson v.

7    Dormire, 180 F.3d 919, 920 (8th Cir. 1999) (petitioner fails to exhaust claims raised in state habeas

8    corpus filed after expiration of the one-year limitations period).   Accordingly, he cannot avail himself

9    of the statutory tolling provisions of the AEDPA.

10           E.   Equitable Tolling.

11           The running of the one-year limitation period under 28 U.S.C. § 2244(d) is subject to equitable

12    tolling in appropriate cases.  See Holland v. Florida, __U.S.__, 130 S.Ct. 2549, 2561 (2010); Calderon

13    v. United States Dist. Ct., 128 F.3d 1283, 1289 (9th Cir. 1997).  The limitation period is subject to

14    equitable tolling when "extraordinary circumstances beyond a prisoner's control make it impossible to

15    file the petition on time."  Shannon v. Newland, 410 F. 3d 1083, 1089-1090 (9th Cir. 2005)(internal

16    quotation marks and citations omitted).  "When external forces, rather than a petitioner's lack of

17    diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations

18    may be appropriate."  Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).  "Generally, a litigant

19    seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing

20    his rights diligently, and (2) that some extraordinary circumstance stood in his way."   Holland, 130

21    S.Ct. at 2652; Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807 (2005). "[T]he threshold

22    necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule."

23    Miranda v. Castro, 292 F. 3d 1062, 1066 (9th Cir. 2002)(citation omitted).  As a consequence,

24    "equitable tolling is unavailable in most cases."  Miles, 187 F. 3d at 1107.

25           Here, Petitioner has made no express claim of entitlement to equitable tolling and, based on the

26    record now before the Court, the Court sees no basis for such a claim.   However, Petitioner's

27    opposition to the motion to dismiss could be construed as either a claim that newly discovered

28    evidence shows he is actually innocent, a fact that would avoid the harsh consequences of the

limitation period, or, alternatively, that the factual basis of his newly discovered evidence claim could not have been discovered with the exercise of due diligence until recently, thus, again, avoiding the operation of the statute of limitations.

       1.   <u>Discovery of the Factual Basis</u>.

      As mentioned, under § 2244(d)(1)(D), the one-year limitation period starts on the date when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," <u>Hasan v. Galaza</u>, 254 F.3d 1150, 1154, fn. 3 (9th Cir. 2001)(*quoting* <u>Owens v. Boyd</u>, 235 F.3d 356, 359 (7th Cir. 2000), not when the factual predicate was actually discovered by Petitioner and not when Petitioner understands the legal theories available to him or the legal significance of the facts that he discovers.  Due diligence does not require "the maximum feasible diligence," but it does require reasonable diligence in the circumstances. <u>Schlueter v. Varner</u>, 384 F.3d 69, 74 (3d Cir. 2004)(*quoting* <u>Moore v. Knight</u>, 368 F.3d 936, 940 (7th Cir. 2004); <u>see</u> <u>Wims v. United States</u>, 225 F.3d 186, 190, fn. 4 (2d Cir. 2000).  It is not necessary for a petitioner to understand the legal significance of the facts; rather, the clock starts when a petitioner understands the facts themselves.  <u>Hasan</u>, 254 F.3d at 1154 fn. 3; <u>Owens</u>, 235 F.3d at 359 ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognized their legal significance.")  To "have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting both unreasonable performance and resulting prejudice." <u>Hasan</u>, 254 F.3d at 1154.  In order to claim the benefit of tolling in this case, it is Petitioner's burden to establish it.  <u>Smith v. Duncan</u>, 297 F.3d 809, 814 (9th Cir. 2002); <u>Tholmer v. Harrison</u>, 2005 WL 3144089 (E.D.Cal. Nov. 22, 2005), *1; <u>see Hinton v. Pac. Enters.</u>, 5 F.3d 391, 395 (9th Cir. 1993)(party seeking tolling bears the burden of alleging facts which would give rise to tolling).

      The petition can be construed as arguing that the one-year period did not commence until after Petitioner discovered the factual predicate for his newly discovered evidence, i.e., June 19, 2010, the date Jesus Hernandez signed his declaration.  However, the date of the declaration is not determinative of the trigger date for the one-year period under § 2244(d)(1)(D); rather, the trigger date is the date

Petitioner became aware of the facts underlying his claim.  Here, Petitioner does not specify when he became aware that Jesus Hernandez had observed the shootings from his front yard.  However, considering the shootings took place in a relatively insular Latino neighborhood where families knew each other and that sixteen years have transpired since the time of the shootings during which Hernandez apparently remained silent due to fear, it strains credulity that those affiliated with Petitioner, or Petitioner himself, would not have been aware of what Hernandez observed from his vantage point in his front yard.  That being so, it is irrelevant that Hernandez refused to come forward; Petitioner would have almost certainly been aware of the factual basis for this claim, i.e., Hernandez's observations, and could have raised it in a timely manner regardless of whether Hernandez was willing to testify or not.  That he waited for sixteen years until Hernandez apparently felt safe enough to come forward strongly suggests a lack of due diligence on Petitioner's part.  In short, the record now before the Court does not support deviating from the normal "trigger" date for the one-year period of July 22, 1998.

    2.   Actual Innocence.

Petitioner's opposition, asserting the discovery of newly discovered evidence, could also be construed as an argument that Petitioner should be excepted from the effects of the one-year limitation period because he is actually innocent.  In McQuiggin v. Perkins, 569 U.S.___,  2013 WL 2300806 (2013), the United States Supreme Court held that "actual innocence" could be an exception to the one-year limitation bar in the AEDPA:

> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup and House,[3] or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S., at 329; see House, 547 U.S., at 538 (emphasizing that the Schlup standard is "demanding" and seldom met). And in making an assessment of the kind Schlup envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. Schlup, 513 U.S., at 332.

McQuiggin, at *3.   The Supreme Court went on to explain an "unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing, and, thus,

---

[3] Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851 (1995); House v. Bell, 547 U.S. 518, 126 S.Ct. 2064 (2006).

"a court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of evidence [of actual innocence]."  Id. at *11, quoting Schlup, 513 U.S. at 332. See also Lee v. Lampert, 653 F.3d 929, 932-933 (9th Cir. 2011)(en banc)("a credible claim of actual innocence constitutes an equitable exception to AEDPA's limitations period, and a petitioner who makes such a showing may pass through the Schlup gateway and have his otherwise time-barred claims heard on the merits." ) The "Schlup gateway," however, may only be employed when a petitioner "falls within the narrow class of cases…implicating a fundamental miscarriage of justice.  Schlup, 513 U.S. at 314-315; McQuiggin, at *9.  However, "[t]o ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving," the Supreme Court explicitly limited the equitable exception to cases where a petitioner has made a showing of innocence.  Schlup, 513 U.S. at 321.  "The Supreme Court did not hold that a petitioner may invoke Schlup whenever he wants a trial do-over."  Lee, 653 F.3d at 946 (Kozinski, J., concurring.)

The rule announced in McQuiggin is not a type of equitable tolling, which provides for an extension of the time statutorily prescribed, but an equitable exception to § 2244(d)(1).  McQuiggin at *7.  Moreover, the Court noted that actual innocence, if proven, merely allows a federal court to address the merits of a petitioner's constitutional claims; the Court has yet to address whether "a freestanding claim of actual innocence" provides a separate basis for granting habeas relief.  McQuiggin at *7.

Here, Petitioner has failed to meet Schlup's exacting standard.  As the Tulare County Superior Court concluded when it denied Petitioner's state habeas petition raising this newly discovered evidence, the only additional piece of evidence not presented previously, either at trial or in Petitioner's first state habeas petition in 2003, is the declaration of Jesus Hernandez, who indicates that he saw Francisco Sanchez fire a shot at Petitioner before Petitioner shot and killed Sanchez.  (Doc. 1, pp. 93-94).  Hernandez states that he did not come forward earlier because of fear.  (Id.).  As the Superior Court pointed out, however, Petitioner had already, and without provocation, shot and killed another member of the Sanchez family and wounded a third.  (Id.).  Francisco Sanchez then fired a shot that hit Petitioner and Petitioner then turned and fatally shot Sanchez. As the state court notes, the "evidence at

1  the trial was overwhelming that petitioner shot all victims without provocation," and, given the well-

2  established chronology of the various shootings, Hernandez' declaration "essentially supports the

3  claims of all other witnesses" at trial.  (Id.).  Moreover, the Superior Court expressed skepticism that

4  such evidence would have any significant probative value coming, as it did, some sixteen years after

5  the original crimes were committed.  (Id.).  Finally, by noting that "[i]t is only after all this time [i.e.,

6  sixteen years] that this alleged witness comes forward," the Superior Court appears to cast doubt on the

7  credibility of such a tardy witness.

8          Given the lapse of sixteen years before the witness Hernandez came forward with purportedly

9  exculpatory evidence, and considering the minimal exculpatory value of such evidence, the Court has

10 little trouble concluding that Petitioner has failed to establish that, "in light of the new evidence, no

11 juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513

12 U.S. at 329.

13                                              **RECOMMENDATION**

14         Accordingly, the Court HEREBY RECOMMENDS that the motion to dismiss (Doc. 11), be

15 GRANTED and the habeas corpus petition be DISMISSED for Petitioner's failure to comply with 28

16 U.S.C. § 2244(d)'s one year limitation period and as a second and successive petition.

17         This Findings and Recommendation is submitted to the United States District Court Judge

18 assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the

19 Local Rules of Practice for the United States District Court, Eastern District of California.

20 Within twenty-one (21) days after being served with a copy, any party may file written objections with

21 the court and serve a copy on all parties.  Such a document should be captioned "Objections to

22 Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

23 filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.  The

24 Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

25 ///

26 ///

27 ///

28 ///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __**July 31, 2013**__                    _____**/s/ Jennifer L. Thurston**
                                                        UNITED STATES MAGISTRATE JUDGE